**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

OPTINETIX INC.,

       *Plaintiff*,

   v.

WALGREEN CO.,

       *Defendant*.

Civil Action No. 1-21-cv-00293-MJT

JURY TRIAL DEMANDED

**DEFENDANT WALGREEN CO.'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

I. STATEMENT OF THE ISSUE ................................................................................ 2

II. STATEMENT OF THE FACTS ............................................................................. 2

III. LEGAL STANDARD ............................................................................................ 3

  A. This case should be disposed of at the pleading stage through Rule 12(c). ........... 3

  B. The Law of 35 U.S.C. § 101. ...................................................................... 4

IV. ARGUMENT ...................................................................................................... 5

  A. The Asserted Patent is Invalid under 35 U.S.C. § 101 ........................................ 5

   1. Claim 1 of the '668 Patent is representative .................................................. 6

   2. *Alice* Step One: Claim 1 of the '668 Patent is directed to the abstract idea of distributing and redeeming coupons. ............................................... 8

   3. *Alice* Step Two: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter ................................... 12

  B. There are no claim construction or factual disputes preventing the Court from ruling on these issues at the Rule 12 stage. ............................................... 16

V. Conclusion ....................................................................................................... 17

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
   836 F. App'x 900 (Fed. Cir. 2020) ...................................................................11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ....................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ....................................................................15

*Ancora Technologies, Inc. v. HTC America, Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) ....................................................................12

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ......................................................................4

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ....................................................................15

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ....................................................................16

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...............................................................................3, 4, 5

*Bosarge v. Mississippi Bureau of Narcotics*,
   796 F.3d 435 (5th Cir. 2015) ..........................................................................3

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ....................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ....................................................................14

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................5, 10

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ........................................................................................4

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ........................................................................................5

*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*,
  855 F.3d 681 (5th Cir. 2017) ............................................................................3

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ...................................................................17

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)....................................................................11, 14

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)........................................................................15

*Finjan, Inc. v. Blue Coat System, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018)..........................................................................8

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
  389 F. Supp. 3d 456 (E.D. Tex. 2019) ..............................................................16

*Fort Props., Inc. v. Am. Master Lease LLC*,
  671 F.3d 1317 (Fed. Cir. 2012)...........................................................................5

*Gottschalk v. Benson*,
  409 U.S. 63 (1972)............................................................................................10

*In re Greenstein*,
  778 F. App'x 935 (Fed. Cir. 2019) ...................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir 2016)....................................................................10, 14

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)........................................................................13

*Machete Productions, L.L.C. v. Page*,
  809 F.3d 282 (5th Cir. 2015) ..............................................................................3

*Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*,
  No. 2:17-cv-00328-JRG-RSP, 2017 WL 5571331 (E.D. Tex. Sept. 15, 2017)............1, 10, 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)........................................................................................5, 10

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)..........................................................................9

*Parker v. Flook*,
  437 U.S. 584 (1978)............................................................................................5

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ............................ 6

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019) ............................ 6, 8

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) .................................................................................. 9

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) .................................................................................. 8

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ................................................................................ 17

*Solutran, Inc. v. Elavon, Inc.*,
932 F.3d 1161 (Fed. Cir. 2019) ................................................................................ 11

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) ................................................................................ 10

*In re TLI Commc'ns LLC Patent Lit.*,
823 F.3d 607 (Fed. Cir. 2016) .............................................................................. 1, 14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ............................................................................... 7, 9

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ............................................ 3, 10, 12

**Statutes**

35 U.S.C. § 101 ....................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................... 16

Fed. R. Civ. P. 12(b)(6) ................................................................................ 3, 17

Fed. R. Civ. P. 12(c) ............................................................................... 2, 3, 5, 17

Distributing and redeeming coupons is an abstract concept that is ineligible for patent protection pursuant to 35 U.S.C. § 101. *See, e.g.*, *Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*, No. 2:17-cv-00328-JRG-RSP, 2017 WL 5571331, at *3 (E.D. Tex. Sept. 15, 2017) (finding claims directed to "mass promotion of marketing and business information" to be an abstract idea), *report and recommendation adopted*, No. 217CV00328JRGRSP, 2017 WL 5557519 (E.D. Tex. Nov. 17, 2017), *aff'd sub nom. Mantis Commc'ns, LLC, v. Edible Arrangements*, LLC, 739 F. App'x 639 (Fed. Cir. 2018). The claims of U.S. Patent No. 7,349,668, which Plaintiff Optinetix Inc. asserts against Defendant Walgreen Co., are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea. The claims recite nothing more than distributing and redeeming coupons, an act that humans have long-performed without the assistance of computers, with the simple instruction to apply this concept using generic computer technology.

Using existing technologies to implement the concept is not a technological improvement, an inventive way of applying conventional technology, or even new as of the priority dates of the '668 Patent. Moreover, none of the claims recites any specific hardware or software; instead, the specification discloses only that the alleged invention uses generic computer components, such as a "mobile communication device" and an "optical reader" that "capture," "stor[e]," and "display "digital information." In other words, the generic components do not supply an inventive concept and instead "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

Resolving this issue does not require discovery or formal claim construction. Optinetix's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of

judicial and party resources unnecessarily litigating invalid patents, Walgreens respectfully requests that the Court dismiss the Complaint pursuant to Rule 12(c).

## I.      STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101 absent an inventive concept that amounts to significantly more than the abstract idea. The '668 Patent is directed to the abstract idea of distributing and redeeming coupons. The '668 Patent does not include an inventive concept beyond that idea. Should the Court therefore dismiss this case pursuant to Rule 12(c)?

## II.     STATEMENT OF THE FACTS

The '668 Patent is entitled "Systems and methods for embedding commercial information into broadcast media" and is directed to the "distribution of information" "such as digital information in the form of coupons." '668 Patent, 1:20–23, 2:22–25. The '668 Patent sought to improve coupon distribution by allowing coupons to be distributed using "broadcast media such as television." *Id.* at 2:22–25. Once distributed to a mobile device, the coupons are redeemed over the phone or in person. *Id.* at 2:66–3:10.

The various embodiments described in the specification differ in that they utilize particular conventional hardware solutions or standards in order to practice the claimed method. In one embodiment, a coupon is superimposed onto a broadcast television video signal. *See id.* at 5:5:18–23. The superimposition is accomplished by an already "commercially available" video processing card. *Id.* at 6:11–28. Although the specification states that description of a coupon is "not limiting," *id.* at 5:24–27, the claims themselves limit application of the method to distribution of coupons. *Id.*, Cl. 1 ("comprising providing a coupon and converting said coupon into digital information"), Cl. 19 ("redeeming said coupon"). The coupon is "placed into the broadcast signal" by an

2

"encoding process" that utilizes an initial "binary code" representation of the coupon. *Id.* at 6:11–29. A user then scans the coupon with a "reader," which contains a "sensor" and "processing circuitry." *Id.* at 7:14–18. The coupon is redeemed after being displayed as a "bar code, or other machine readable form" and then scanned, or being transmitted by "infra-red (IR) or visible light transmissions, Radio frequency transmissions, including Bluetooth transmissions, [or] cellular transmissions." *Id.* at 10:36–41. In short, the patent attempts to claim the abstract idea of distributing and redeeming coupons by implementing the concept using various arrangements of conventional computer components and standard transmission processes and protocols.

### III.    LEGAL STANDARD

#### A.    This case should be disposed of at the pleading stage through Rule 12(c).

In the Fifth Circuit, Rule 12(c) motion standards are the same as Rule 12(b)(6) motion standards. Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 685 (5th Cir. 2017). While factual allegations are taken as true, viewed in the light most favorable to the plaintiff, legal conclusions are given no deference. Fed. R. Civ. Proc., Rule 12(c); *Machete Productions, L.L.C. v. Page*, 809 F.3d 282, 287 (5th Cir. 2015); *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439-40 (5th Cir. 2015).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J.,

concurring). In such cases, claim construction is not required for a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

>    **B.    The Law of 35 U.S.C. § 101.**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

"[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 223. Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 221

4

(quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 566 U.S. at 78–79, 82–83; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## IV.    ARGUMENT

### A.    The Asserted Patent is Invalid under 35 U.S.C. § 101

The claims of the '668 Patent are directed to the abstract idea of distributing and redeeming coupons. As such, the '668 Patent is invalid under 35 U.S.C. § 101. The claims of the '668 Patent fail both prongs of the *Alice* test. First, each claim is directed to the abstract idea of distributing and redeeming coupons, and abstract ideas are not eligible for patenting. Second, each claim lacks an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 218 (emphasis added). Because Optinetix has failed to state a claim upon which relief can be granted, Walgreens respectfully requests the Court to grant its motion for judgment on the pleadings, and grant judgment in favor of Walgreens on Optinetix's claims pursuant to Rule 12(c).

1.    **Claim 1 of the '668 Patent is representative.**

Claim 1 of the '668 Patent is representative of the claims. *See, e.g., Phoenix Licensing,*

*L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D.

Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims"

where the other claims were "substantially similar" and "linked to the same abstract idea"); *see*

*also Alice*, 573 U.S. at 224–26 (invalidating over 200 claims across four patents based on two

representative claims). The remaining claims of the '668 Patent recite the same abstract idea:

distributing and redeeming coupons. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-

cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants

first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff

to identify a difference material to the § 101 analysis).

Claim 1 recites:

1. A method for information distribution comprising:

electronically inserting digital information encoded as a noticeable indicator into a broadcast signal containing a related content, said inserting comprising providing a coupon and converting said coupon into digital information;

prompting a user, via said noticeable indicator, to capture said digital information from said noticeable indicator within said broadcast signal;

transforming said captured digital information from said noticeable indicator into a format recognizable to a mobile communication device, thereby to produce transformed information; and

storing said transformed information on said mobile communication device for display of the digital information

the method additionally comprising redeeming said coupon by:

storing said transformed information in a form that is suitable for display on a display screen of a said mobile communication device in a manner that can be read by an optical reader; and

> activating said mobile communication device to display said
> information on said display screen, for said
> information to be readable by an optical reader at a
> point of sale.

'668 Patent, Cl. 1. The other independent claim (Claim 19) recites a substantially overlapping

method. The two independent claims overlap substantially because each claims a method for

"information distribution" in which "digital information [is] encoded" in a "noticeable indicator."

Each method then "prompt[s] a user, via said noticeable indicator to capture said digital

information," and then "transform[s]" the "digital information" "into a format recognizable [to/by]

a mobile communication device" "to produce transformed information," "storing said transformed

information on said mobile communication device for display." The primary difference between

the two claims is that the method in Claim 1 describes "storing said information in a form that is"

able to be "read by an optical reader," whereas the method in Claim 19 describes "storing said

information in a form that is" able to be "transmitt[ed] by cellular telephony." The differences

between the two claims are insubstantial with respect to eligibility, as each are directed to the same

abstract idea: distributing and redeeming coupons. The differences also amount to "result-based

functional language" that fails to describe in a non-abstract way of how to achieve the result. *Two-*

*Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

    None of these claims departs from the same abstract idea of distributing and redeeming

coupons. The dependent claims differ by reciting various ways for the customer to "capture" the

coupon, or various processes for redemption of the coupon. In other words, the only differences

relate to token or insignificant pre- or post-solution activity, such as:

| Pre- or Post-Solution Activity | Dependent Claims |
|---|---|
| "placing" digital information by "coupling" with a specific type of signal | Claims 2, 6, 12, 13, 20 |
| encoding "digital information" in a particular manner | Claims 3–5 |
| storing "transformed information" in a particular manner | Claims 7–11 |
| displaying information in various ways | Claims 14, 22–23, |
| "redeem[ing]" coupons in various manners | Claims 15–18, 21, 24–26 |
| receiving "transmission from a receiving device" using particular types of "address[es]" and "transmission[s]" | Claims 27–37 |
| providing various forms of information | Claims 38–42 |
| using a "light pulse reader" | Claims 43–46 |

Accordingly, Claim 1 is representative for the § 101 analysis. *See PPS Data*, 2019 WL 1317286, at *5.

2.    *Alice* **Step One: Claim 1 of the '668 Patent is directed to the abstract idea of distributing and redeeming coupons.**

Claim 1 of the '668 Patent is directed to an unpatentable, abstract idea because it claims nothing more than the "longstanding," "routine," and "conventional" concept of distributing and redeeming coupons. In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217. In assessing whether a claim is directed to an abstract idea, courts begin by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that courts should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). All Claim 1 is trying to achieve is "inserting digital information" into a "broadcast signal" and "prompting a user" to "capture the information by using a "format

recognizable to a mobile communication device," to "store" and "display" coupons. In other words, the claims are directed to the abstract idea of distributing and redeeming coupons.

At step one, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd.*, 874 F.3d at 1337; *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery.").

The functional nature of Claim 1's limitations supports its abstractness. *See Two-Way Media Ltd.*, 874 F.3d 1329 at 1337 (directing courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery"). The relevant question is whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). Claim 1 of the '668 Patent recites the functional steps of "*inserting* digital information" (where the digital information is "a coupon"), "*prompting* a user . . . to capture" a coupon, "*transforming*" the coupon "into a format recognizable to a mobile communication device," and "*storing*" the coupon such that it is "suitable for display" on the mobile device and able to be "activat[ed]" when read by a "point of sale." '668 Patent, Cl. 1 (emphasis added). None of the claimed functions are tethered to any specific means or methods.

Distributing and redeeming coupons is a process "commonplace in the consumer retail market." '668 Patent, 1:27. The '668 Patent concedes that "[m]ost coupons are paper coupons,

typically distributed through the print media, such as newspapers, magazines, circulars, etc., direct contact, such as dispensers in stores and flyers, mail, and recently, by computer, as a coupon can be printed from the internet." *Id.* at 1:34–38. For example, a newspaper may include a coupon that a reader may clip and take into the store to redeem. Computerized operations that could be accomplished mentally or with a pencil and paper are unpatentable. *See Gottschalk*, 409 U.S. at 67; *CyberSource*, 654 F.3d at 1373; *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146–47 (Fed. Cir. 2016) (reaffirming this mental process doctrine after *Alice* and *Mayo*). That is the nature of representative Claim 1 here—it recites processes for "electronically inserting" and facilitating coupon distribution by using a "mobile communication device." At a high level, the representative claim describes the most generic functional steps of a standard mobile device (i.e., reading, storing, and displaying data). *See* '668 Patent, Cl. 1. Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like a "mobile communication device" does not make it any less abstract. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir 2016) ("Claims that 'amount to nothing significantly more than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer' and in which 'each step does no more than require a generic computer to perform generic computer functions' do not make an abstract idea patent eligible" (citing *Alice*, 134 S. Ct. at 2359–60).).

The claims at issue in this case are also similar to claims previously held invalid by courts in this District. In *Mantis Communications, LLC*, the "claim combine[d] known computer and mobile device-related technology to implement the equivalent of what could be done through advertising flyers or a catalogue subscription." 2017 WL 5571331, at *3. The representative claim

was "directed to mass promotion of marketing and business information." *Id*. The claimed system involved a "server," a "system capable of capturing a unique identifier," and a "mobile device" to allow a user to "redeem" coupons. *Id.* Like Claim 1 of the '668 Patent at issue here, the claim language purported to implement an abstract idea with generic computer components. "In other words, the claim combines known computer and mobile device-related technology to implement the equivalent of what could be done through advertising flyers or a catalogue subscription." *Id*.

The fact that Claim 1 limits this idea to "inserting digital information" as a "noticeable indicator into a broadcast signal" does not save the claims, as restrictions limiting the kind of information gathered are immaterial. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also id*. ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (holding that encoding and decoding image data and converting between two formats is an abstract idea). Similarly, "transforming" the "captured" information "into a format recognizable to a mobile communication device" and then "storing" it does not change the analysis. *See Solutran, Inc. v. Elavon, Inc.*, 932 F.3d 1161, 1166 (Fed. Cir. 2019) ("[A] method of extracting and then processing information from hard copy documents, including paper checks, was drawn to the abstract idea of collecting data, recognizing certain data within the collected data set, and storing that recognized data in a memory" (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).).

Claim 1 thus differs from and falls short of claims that the Federal Circuit has held to be eligible. Eligible claims disclose specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated: "[i]mproving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id*. at 1348. The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id*. The same is not true here— Claim 1 of the '668 Patent does not require a specific or unconventional technique, nor does it identify any specific improvement to computer functionality, much less an unexpected way of effecting such an improvement.

The claimed advance of the claims is the application of the long-standing concept of distributing and redeeming coupons applied on a generic computer. Accordingly, Claim 1 fail *Alice* step one. *See Alice*, 134 S. Ct. at 2355.

3.     *Alice* **Step Two: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Claim 1 is directed to an abstract idea; therefore, the Court must next determine whether the claim contains "an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, the '668 Patent is

12

broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '668 Patent is to reduce the "costs associated with paper coupons" and reduction of "impulse buying," not a single technical improvement is discussed, much less claimed. '668 Patent, 1:38–60. Claim 1 requires a "noticeable indicator," "broadcast signal," "mobile communication device," and "an optical reader at a point of sale." No special programming or improved components are claimed, nor are they required. Indeed, the specification confirms this—the "noticeable indicator" is any "encrypted visual pattern," that may be broadcast "over any kind of media and video display," read by any type of a "mobile communication device" (e.g., "cellular telephones, personal digital assistants (PDA's), "electronic wallets" and combinations thereof") and any "reader." *Id*. at 7:14–47.

Each step of the '668 Patent is described only at a high level of generality; the patent's specification is not illuminating. The claimed method first requires "electronically inserting digital information encoded as a noticeable indicator into a broadcast signal containing related content." This step is both conventional and generic; the "digital coupon information" is "translated to digital information, typically binary code" representing a "visual pattern" which is then "superimposed" using a "commercially available" "video processing card." '668 Patent, 6:4–26. In other words, a coupon is converted to a known numeral system and then displayed using conventional, commercially available, and generic hardware. There are additional steps of "storing" and "transforming" the information, but the claims and specification make no mention of *how* these steps are accomplished. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (where a claim "contains no restrictions on how the result is accomplished," but

13

rather is directed to the abstract idea itself, the claim is not directed to patent-eligible subject matter).

Nor are any special components needed. The purported invention can use any "mobile communication device" coupled with a "reader" that contains any "sensor" and "processing circuitry." '668 Patent, 7:14–28. Claim 1 of the '668 Patent recites nothing more than implementing the underlying abstract idea by using off-the-shelf generic computer components to perform the corresponding routine, well-understood, and conventional tasks of "inserting" a coupon "within" a "broadcast signal" and "storing," "display[ing]," and "activating" the coupon on a "mobile communication device." '668 Patent, Cl. 1; *In re Greenstein*, 778 F. App'x 935, 939 (Fed. Cir. 2019) (holding that "stor[ing], process[ing], and transmit[ting] information" is "generic use of a computer"). The specification is replete with mentions of generic components used to practice aspects of the method: a "reader" is used to scan the "visual pattern." '668 Patent, 7:14–28. A "mobile communication device" stores the coupon. *Id.* at 2:63–64. The coupon is "transmitted" to be redeemed using conventional methods such as "infra red (IR), radio frequency (RF), [or] cellular transmission." *Id.* at 3:6–10. And the "broadcast signal" may use any "existing broadcasting technology." *Id.* at 2:34–36. Describing the use of admittedly conventional computer technology cannot supply an inventive concept to the claims of the '668 Patent. *Content Extraction*, 776 F.3d at 1347–48; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); *Symantec Corp.*, 838 F.3d at 1320 (invalidating claims that require a "server," which "merely provides a 'generic environment' in which to carry out the well-known and abstract idea").

The claims are devoid of any explanation as to how to implement the invention in a specific manner that would improve the functioning of existing systems or components from a technical standpoint and thus provide no inventive concept. *See In re TLI Commc'ns LLC Pat. Litig.*, 823

14

F.3d 607, 615 (Fed. Cir. 2016); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Further, unlike the claims in *Enfish*—which recited "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory"—the representative claims do not set forth a specific improvement in computer capabilities. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Therefore, representative Claim 1 do not improve the functioning of a computer or other technology.

Claim 1 is nothing like those held by the Federal Circuit to provide an inventive concept. In *Amdocs*, for example, the Federal Circuit held that the claimed invention was patentable, because, while the elements individually required "arguably generic components," they involved an "unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)" and "depend[ed] upon the invention's unique distributed architecture." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-03 (Fed. Cir. 2016); *see also BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" to provide a technology-based solution). Unlike *Amdocs* and *Bascom*, Claim 1 does not solve a technological problem, nor does it present a technological solution or technical improvement.

The generic nature of the claims and the manner in which the specification purports to implement them using generic computer technology establish that the '668 Patent does not add "significantly more" to the abstract idea of distributing and redeeming coupons. *See Alice*, 573

U.S. at 224–226. The claims thus do not contain an inventive concept sufficient to confer eligibility.

**B.    There are no claim construction or factual disputes preventing the Court from ruling on these issues at the Rule 12 stage.**

The issue of patent eligibility is ripe for the Court's consideration because there are no factual or claim construction issues precluding resolution on the pleadings. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370.

It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific

factual allegation that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

The Court's ineligibility analysis should disregard Optinetix's boilerplate legal conclusions about the inventive aspects of its asserted patents. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). For example, Optinetix alleges that the claims "do not merely recite the performance of a familiar business practice with a requirement to perform it on the Internet." Dkt. 1, ¶ 15. Optinetix further alleges, "the claims recite one or more inventive concepts that are rooted in improving the efficiency of coupon distribution via mobile communication devices and broadcast media" *Id.* These are not factual allegations—they are legal conclusions by which Optinetix attempts to unilaterally declare its patents are directed to eligible subject matter. *See Simio*, 983 F.3d at 1366 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."). The Court should disregard these statements.

Once Optinetix's conclusory legal allegations about the inventiveness of its asserted patents are properly disregarded, there is nothing left to preclude a determination of ineligibility on the pleadings. Accordingly, Walgreens' motion is ripe, and it should be granted.

V.     **CONCLUSION**

Optinetix's claims are directed to an abstract idea and lack an inventive concept. Because the '668 Patent is directed to patent-ineligible subject matter, Walgreens respectfully requests that the Court enter final judgment on the pleadings in favor of Walgreens and against Optinetix pursuant to Rule 12(c), along with all other relief this Court deems just and proper.

17

Dated: November 3, 2021

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Lance E. Wyatt*
     Neil J. McNabnay
     Texas Bar No. 24002583
     Ricardo J. Bonilla
     Texas Bar No. 24082704
     Lance E. Wyatt
     Texas Bar No. 24093397
     Adil A. Shaikh
     Texas Bar No. 24117039
     1717 Main Street, Suite 5000
     Dallas, Texas 75201
     (214) 747-5070 (Telephone)
     (214) 747-2091 (Facsimile)
     mcnabnay@fr.com
     rbonilla@fr.com
     wyatt@fr.com
     shaikh@fr.com

***COUNSEL FOR DEFENDANTS***
***WALGREEN CO.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

CM/ECF participants.

                       */s/ Lance E. Wyatt*
                       Lance E. Wyatt